Good morning, everyone. The first case this morning is number 2010-1291, McKesson Technologies v. Epic Systems. Mr. Clarence. Good morning, Your Honors. I hope to save four minutes for rebuttal. This case poses the question whether any relationship, other than the master-servant relationship, suffices for joint infringement liability under the direction or control test of BMC and Muni Auction. Muni Auction referred to the spectrum of multiparty relationships, and it, of course, dealt with the arm's-length relationship between an auctioneer and a bidder, which is at one end of that spectrum. This case involves communications between a doctor and a patient about the patient's medical care, and I think it certainly lies at the other end of the multiparty spectrum. But, of course, the whole reference to a spectrum of multiparty relationships would have been beside the point if, as Apelli suggests, the only relationship that counts is a master-servant relationship that would impose vicarious liability on the master for the actions of the servant. And so we would suggest that the law is not that there is only joint infringement liability under circumstances where you have a master, and the master is liable, and the servant acts as nothing more than an automaton, to use Apelli's colorful phrase. If that had been the law, it would have been simple enough for the court to say so in BMC and Muni Auction. Mr. Clement, in Muni Auction and in BMC resources, the court made this statement that the analysis in those cases was founded on the proposition that direct infringement requires a single party to perform every step of a claimed method. Oh, and it seems that the decisions in both of those cases then flowed from that premise to define circumstances in which the activities of another party could be attributed to the accused. How does that mesh with the proposition that you're presenting to us? Well, two things, Judge Lynn. First of all, I mean, I think that premise may actually be worth examining, because I think, you know, I looked at BMC that states that most boldly, and it cites Dynacor for that proposition. And I looked at the page of Dynacor that it cited, and I simply did not find that proposition. There's a clear proposition which nobody disputes, which is you can't have indirect infringement unless the patent has been directly infringed. But what BMC adds with that cite to Dynacor is there can't be indirect infringement unless there's direct infringement by a single party. And I don't know why that would be the case. And if that premise fails, then this becomes an easy case, because nobody doubts that Epic has induced the infringement of every step of this patent. The analysis, though, following that statement of BMC, which, as I say, I don't think really withstands analysis, is that we can only hold Epic liable for indirect inducement, not if we can show that every step of the patent is directly infringed, but that every step of the patent is directly infringed by one party that can have those steps attributed to it. And the logical party here would be the doctors. But again, I totally take the point, which may or may not have been the point of your question, which is if you take away that premise, which doesn't seem well-founded, this is a much straightforward and easier case. I think the flip side is if the premise does withhold critical analysis, then your theory is a difficult one to sell. It's more difficult. I think the question really becomes under those cases, can you attribute the actions of the patient to the doctor under these circumstances? And I think that there is certainly a fair answer that you can attribute those actions. And I think that there are essentially two reasons for that. One is the nature of the relationship. And the patient-doctor relationship clearly puts this on a different footing from the cases that involve an arm's-length relationship. Well, I'm not sure I follow the reasoning there. What relevance is it to the fact that the doctor-patient relationship is a unique relationship in terms of whether you're attributing the conduct of one to another? Well, I think it's not just that it's a unique relationship, but I think it's a relationship that is unique under circumstances in which there's not much doubt who's in control of that relationship, at least for purposes of the medical care. It's not to be sure that the patient is somehow obligated as a matter of law to follow the doctor's instructions. Of course not. And we all know about patients that don't follow every jot and tittle of the doctor's instructions. But on the other hand... Well, agents sometimes don't follow the directions of their masters, and yet that's still an agency relationship. That's absolutely true. I wouldn't say, though, we're not here for the proposition that there's an agency relationship. I understand, but your submission, I take it, is that this is one in which whatever direction and control means that this would be one that you see as fitting within at least the broad parameters of that concept. That's correct. And I think that's particularly true if you think about what this patent, what this innovation is being used for. It's being used for things like... And this is right from the red brief, so I don't think there's any dispute about this. It's being used for making appointments, getting refills on prescriptions. And as to those matters, I mean, the doctor tells you, well, take this prescription, and if you still have the condition once this prescription is used up, use the system to get us a refill. Now, it's true that they don't you have to use the system. If you don't use the system, we won't give you a refill. We won't return your calls. And I'm sure that some of the doctors that use this system have patients that don't yet have internet access and that sort of thing. So it's not that kind of direct command the way you would have with a master-servant relationship. If we can go back to the premise that you were discussing earlier with Judge Land, if you could go back to the day before BMC was and devise a test for direct infringement by two parties, how would you describe the necessary relationship between the two parties that would be sufficient to trigger infringement? Let me begin by saying, clearly, there has to be some kind of relationship. You can't have infringement by someone in San Francisco doing something unbeknownst to someone in New York who does something else. You say, aha, there you go. You got infringement. So there has to be some kind of relationship. But I'd like to get your sense of what the relationship needs to be. And I want to make two points. One is, just to be directly responsive to your question, I think, you know, the district courts had adopted different approaches. Some had adopted an approach that's more like a direct or control. Some had adopted a test that I think was referred to as some connection. I think maybe some connection plus certainly knowledge would not be a bad way to formulate the test. But to really go to the premise, I mean, if I go back to the day before BMC, I think what I really want to emphasize is, whatever you say about the circumstances to take our case where you can hold the doctor liable for the actions of the patients, don't make that the only way to hold Epic liable when it induces every step of the patent, the doctors and the patients, by selling this product. Under those circumstances, it seems to me that the first thing I'd want to do is break this notion that not only can you not have indirect liability when there's direct infringement. Of course, that's true. But that you can only have indirect infringement when there's direct infringement by a single party. So you would say, in response to my example, that as long as there's somebody in St. Louis who's directing the conduct of the person in San Francisco and the person in New York, even though those two people were completely unknown to one another, nonetheless, there would be inducement because of the knowledge, the state of knowledge and purpose, whatever that means, of the person in St. Louis who's inducing. That's exactly right. I mean, you know, the funny thing is BMC and Muni Auction use this phrase, the mastermind. Well, in a case like this, there's no doubt who at least one mastermind is. The mastermind is Epic. And they're selling this product, the whole point of which is to bring the doctors and the patients together in a way that performs a process that's very similar to the patented invention, and we would say infringes the patent invention. That's not an issue the courts have gotten to. But the mastermind here is, you know, if you're focused only on the doctors and the patients, I think it's fair to say the mastermind of that relationship is the doctor. But if you take a step back, Epic is clearly the mastermind of the infringement. But if you're right, then you would have created a system in which there would be induced infringement, even though there's no direct infringement, because you would not have either of those two parties, by hypothesis, guilty either individually or collectively of direct infringement if they were not, if they were completely unaware of one another's conduct. I'd put it slightly differently, Judge Bryson, which is I would say you would have indirect inducement liability in a situation where no party is liable for direct infringement. But nonetheless, there is direct infringement. And I mean, just let me give you an example from the copyright, you know, realm and see if this helps. I mean, I think you could have two cases where, let's say, you have a small work, and use of half the work by one of two parties is fair use. Now, but if you had somebody, and the whole purpose was they were going to bring those two with their half-fair uses together in a way that clearly infringed the entire work, I would think that you would not want to hold either party with their fair use liable if they didn't have knowledge that this whole thing was going forward. But you would hold liable the party that basically went out of their way to put the two halves together and deprive the copyright holder of the value of the whole work. And that does seem to me essentially what we have here. I don't want to suggest that our position rests on this, because I think we do think we can make the argument based on the doctor's control of this relationship with the patient, especially if you think about this is a different situation, quite a different situation, from Muni Auction and BMC, where you had multi-party, three or four parties involved. Here it is, a relatively simple case where you have essentially every step but the initial step is performed by a single party, and there is control in that circumstances. Go ahead. Well, as I listened to the exchange, we, and I think you too, have been using direct infringement and induced infringement and the various indirect forms sort of interchangeably. But, and I assume from the overall perspective of this case, that as the patentee, one really doesn't care whether it's called direct, with more than one person participating, or indirect, because there is a heavier and a lighter weight in the participation, or we haven't talked about contributory infringement, which is probably one of the most classical situations where, in fact, the steps of the infringement are performed by various participants. So that really doesn't matter to your overall case. No, it really does, it really doesn't, Judge Newman, and I think if you throw joint infringement, that notion in there, that's, I mean, that is really, to use a colloquialism, kind of a tweener. I mean, it's, you know, it really is the line between, you know, direct and indirect infringement. But you're absolutely right, from the perspective of my client, it doesn't so much matter what box you put it in, it just seems that the conclusion we're being confronted with is that simply because we referred to two parties in our patent, that we are not going to be able to stop even the most egregious example of a competitor trying to infringe that patent, and get two parties together to infringe that patent. Now, you know, BMC was not particularly comforting in that, confronting that situation, so we'll just write the patent differently. And I really don't think that's a complete answer for two reasons. One is that there are some patents where you're just not going to be able to do that, but second, and I think more importantly, I mean, the innovation here was to provide a mechanism to better manage the doctor-patient relationship. Now, if that's the innovation, what sense does it make to force them to write that patent in a way that's artificial, and really doesn't get to what the innovation is? If you go all the way back to the Constitution, I mean, it says promote the useful sciences. It doesn't say promote the useful sciences unless that would involve collaboration between two parties. I just can't think of a single reason why the court would want to adopt a rule that expressed sort of skepticism about patents where the innovation was to allow two parties to collaborate better. And I just don't see a reason why that's a particular area of innovation you essentially want to put off limits. But I think... Mr. Clement, in your brief, you discuss common law theories of joint tort fees or liability, and suggested that those theories should apply in a patent context, no less than it applies in a copyright context, or any other tort-related context. But of course, patent liability is established not by common law rules, but by a statutory scheme which defines direct infringement, induced infringement, contributory infringement. So I'm a little confused as to why or how sort of these common law notions of joint tort fees or liability would apply to a strict liability offense established by statute. Well, Judge Lane, let me try two kinds of responses to that. One is to say that I don't think that even though that we're talking about statutory liability here, that that renders the common law irrelevant. Because the statute surely refers to inducement liability, secondary liability, and has particular provisions, but it doesn't address certainly an issue like this with specificity. And so our submission is the statute, like any other statute, picks up a common law at the time it was passed. And in 1952, there was no notion that you wouldn't have sort of joint liability under any circumstances. We point to some of the earlier regional circuit cases that predate the patent statute, and they use different rubrics. Some of them use the contributory infringement rubric. Others use different rubrics. But there's no case that stands for the proposition pre-1952 that you wouldn't have, that there's some bright line rule that you wouldn't have liability under these circumstances. And so it would be one thing if there were that rule out there and the statute picked it up. I mean, that would be a different situation. The second point to make about this is you can use those common law cases in a hard way in 1952, so you pick them up. The soft way is just to say, well, is there something textually in the patent statute or otherwise that suggests that the patent statute, although it's unique and it's based on its own textual statute, should be so different from every other area of the law? The other, I guess, subnote to that is the other thing that would be really puzzling is to think about how far method patents would get from other patents. Because this issue doesn't really arise in a typical case involving a non-method patent, because there's a doctrine that basically says the party who commits the last step violates the patent, infringes. But that rule, which is a substantive rule of patent law that has nothing to do with indirect liability, but it sort of ensures that you're not really going to have much of a problem with joint infringement liability. But in the method context, we have this notion that you infringe by performing every method, every step in the method. And so that really raises this question a little bit uniquely in the method context. But I still can't think of a good reason why you'd want to have a doctrine that says that in the method context, you can never have a valid patent that requires actions by two parties. And Appelli, to its credit, is quite candid. Their view is the reason this case is an easy case for you is because we have a patent that on its face involves two parties. And they suggest that makes this an easy case. And I think that's what makes this a hard case. That's a perfectly valid patent. We will save you rebuttal time, Mr. Perkins. Mr. Moore. Thank you, Your Honor. May it please the Court. This Court has long interpreted Section 271A of the Patent Act to require a single actor to perform all the steps of a method claim. And now McKesson concedes three facts in this case that make this case fit squarely within this Court's precedent in BMC resources and meme auction. I think you're saying that we have required that all the steps be performed. But I do think it's fairly recent jurisprudence that has tried to put some rigor into who does what under what conditions. You're correct, Your Honor, that in BMC and meme auction, this Court has elaborated on tests to apply for situations where direct infringement may be found by more than one party. But that does go back to the roots of how this Court has interpreted Section 271A, which is to require a single actor to perform all the steps of a method claim. What's the basis for that premise? The policy announced in BMC was that because direct infringement is a strict liability statute, therefore that it's only fair that the public notice function of claims let actors know what steps they must take in order to infringe the patent. Well, why does that mean that only a single party can infringe? Only a single party may infringe because the act of direct infringement must occur and the single party has strict liability for the action. So, in other words, it's like Judge Bryson's example of San Francisco and New York. If you have one party doing something and another party doing the other parts of the step, those two parties could both be strictly liable for those actions. And it is the notice function of claims of a patent to let the parties know what actions they must take in order to trigger liability. Yet further, as this Court has found in BMC... But if there's some relationship between the parties, then that would address the concern you have with regard to strict liability, would it not? If there's a sufficient relationship, and that's what the Court's decision in Muni Auction addressed, was what is the relationship that would make it so that one party's conduct may be attributable to another party so that, in effect, that second party is acting on behalf of the first. And that takes care of those problems of notice and fairness because the first actor, the mastermind, is performing all steps of the claim either on its own or through another party acting on its behalf. And that's the situation this Court's faced in Muni Auction. And contrary to Appolin's argument, this Court did adopt common law rules in that respect by adopting the doctrine of vicarious liability. But why, to follow up on Judge Lynn's question, why is the policy that you were just articulating served only by a direction or control or acting on behalf of type fairly restrictive formula as support, even though the support may be offered by people who are acting not as master servant or direction of control but independently? But they know perfectly well what each is doing, and they are indeed acting with the intent to promote the joint activities of each. That begins to blur the lines, and these are statutory lines. This is not a matter of common law. When Congress passed the Patent Act, it was very careful to have different sections of the statute for direct and the two different forms of indirect. Let's just talk about direct here just to make it a little simpler. But in my example, why is it that the policies that you were just talking about that underlie the notion that you really need to have, it's a strict notice to the parties that they are indeed putting themselves in a position of liability. But why isn't that applicable in a situation where there's full knowledge on the behalf of both parties? As I was explaining, that blurs the lines between the different forms of liability. As the Court noted in BMC, there would be no need to pursue an indirect infringement claim if direct infringement included actions of multiple parties, each performing part of a method. And indeed, you could have the situation where one party performed some of the steps and then induced another and then perhaps contributed to a third party performing other steps. And that's all under the rubric of a strict liability tort of direct infringement. That would essentially render the other two parts of the statute, the inducement and contributory sections, irrelevant. And that's the concern. I think it's the other way around. I think that those provisions and the evolution of the law for indirect, for induced, and contributory infringement was just to avoid this kind of debate when, in fact, there was infringement and it was observed that the tort, going back to the common law that was applied to the patent system, that we didn't have this argument about, well, this and that, you told them to do it, and you provided the wherewithal, and they infringed but didn't provide the details. We often saw this in the chemical arts, where a chemical with no non-infringing use was provided by someone. And as the law evolved, as I always understood it, it was not to draw bright lines but to blur the lines so that there were no cracks into which something could fall. Now, that still doesn't mean that there may not be liability overall in certain circumstances. And perhaps that's the direction that we should concentrate on here, because indirect infringement is not off the table in this appeal, as I understand it, that if, in fact, there is a case to be litigated, it could be on any of these grounds. Well, indirect infringement has not been decided by the district court because of the issue of direct infringement. The issue, I think, comes down to the different levels of knowledge or intent required for each form of infringement. As I said, direct infringement is strict liability. Contributory and inducement require some level of knowledge or intent. But if there is innocent infringement, if someone innocently performs a step that turns out to be a step, maybe the opening step in a claim process, this wouldn't necessarily negate infringement. It might affect damages. It might affect a lot of other aspects of the consequences of infringement. But why does it mean there's no infringement? Because that party that performs that initial step could be liable under an expanded definition of direct infringement, which is why— That's the line that I'm inquiring about. Maybe, maybe not. But your theory is that because such a person could be liable, therefore, there can never be infringement, and no one can be liable. Well, this court has noted, back to the Sage Products case, that it's important to write your claims correctly to capture, and in this case, the way to write them correctly is to capture the action of one party. There's no reason that this patent could not have been written in that fashion. And that, as this court has balanced those risks of strict liability for parties for direct infringement versus the public notice function of the claims and the need to write the claims correctly, this court has repeatedly held that the balance lies on the patentee to write claims correctly to avoid this problem of potentially having, in this case, patients get swept up in the finding of direct infringement of this patent. And it's a separate question whether there's sufficient intent or knowledge on the part of a company like Epic so as to be liable for indirect infringement. Indirect infringement is not part of this appeal. It's solely about how are the actions of providers and patients, should they be combined. And let's not forget here that the facts on the record here are undisputed that this is an optional website that patients may choose to use or not use. So whatever the right standard is, whether it's vicarious liability, somewhere further along the spectrum, this is not the vehicle to delineate the outer lines of that test because this is a purely optional website. Patients may use it or not use it. It's undisputed in the record that there's not a single health care provider that requires a patient to initiate a communication using the MyChart website. So this case just simply does not present the outer boundaries of what might be the appropriate test for multiple combined action because whatever those outer limits might be, it's not the case where two parties are engaged and one party gives someone the option to do something or not. Under even the most liberal standards of the district courts pre-BMC, I don't think there would have been joint infringement in this case. Mr. Clement also addressed some of the other areas of common law. And as I mentioned, this court was not ignorant of the common law when it adopted the standard immunity option. It adopted the proper common law standard for direct infringement, which is vicarious liability. That is, one is one party's action to be attributed to another. McKesson argues that other forms of common law should also be adopted, such as joint tort fees or principles. It cites to the restatement and to some porn books that talk about cases where parties jointly pollute a river, for example, and cause damage. But those aren't the right cases for this situation, again, because direct infringement is a strict liability tort. And in all those other common law theories of joint liability, there was a requirement of some fault, either intentional action or negligence or knowledge on the part of one party. How did it get to be strict liability? I'm sorry to interrupt. How do you keep saying that it's a strict liability tort? Direct infringement? Yes, that's not in the statute. You were saying that the this court's precedent long has established that direct patent infringement is a strict liability tort, and there need be no knowledge of the patent, no intent to infringe. And it's purely a strict liability tort as contrasted from induced infringement or contributory infringement, which requires an intent or knowledge on the part of the actor. And so that's what distinguishes this case from those other common law theories, which this court correctly in muni option did not adopt. Instead, it adopted the common law theory most which is how one would measure whether one party's actions should be attributed to another so as to have a single act of direct infringement. So to make sure I understand this point, we're saying that because the patient who would innocently, not knowing about the patent, perform the first step of the claim, and because of the strict liability rule, there can be no liability for anyone? In this case, because it's an optional voluntary decision by the patient whether to initiate communication, yes, one actor does not act to perform the method of the claim. And McKesson concedes this, that there must be two actors. So then we examine whether one actor directs or controls the actions of another so that one actor is acting on behalf of the other, so that the acting on behalf of the provider. And there's simply no evidence in this record. McKesson did not undertake to provide any such evidence. In fact, it didn't even argue this close personal relationship or any of these issues you've heard today in the district court. There's nothing in the record to suggest that providers direct or control their patients to initiate a communication, which is why there's no single act of direct infringement here that can give rise to indirect liability. In summary, the district court correctly ruled, following this court's precedent in BMC and uni auction, that because two parties are required to perform the patented method and because there's no evidence of direction or control, that summary judgment of non-infringement was properly entered on the grounds that Epic could not be indirectly liable for that infringement. This court should continue to adhere to its holdings in BMC and muni auction because they uphold the statutory purpose of providing that there must be an act of direct infringement by a single actor in order to render that single actor strictly liable. And that single actor must perform all elements by itself or must direct or control the performance of those elements. This court should not depart from that well-established precedent and adopt a different rule that would throw into, we suggest, chaos the public notice function of claims and leave openings for where liability could find in joint infringement situations. We therefore respectfully request that the district court's judgment be affirmed. Thank you, Mr. Moore. Thank you. Thank you. I'd just like to make three points in rebuttal. First of all, Apelli talks about the specter of the patient being liable. Of course, that's not what's at issue here. The submission on our part is that the doctor controls the relationship. The doctor performs all but one step and the doctor directs or controls the patients in the context of this overall innovation. And for that reason, it would be the doctor that would be liable, not the patient. The second point is, as I understand Apelli's submission, they really emphasize- if they were deemed to be joint court visas, then presumably the patient would be suable. That's correct, Judge Bryson, if it was truly joint liability. But I think under this court's precedents, I think as I read this court's precedents, they actually foreclose the idea that there would be true joint liability. And what they look to instead is this idea that if there is one party that essentially can have- if there's a minimal step, that can be fairly attributed to the other party, then it's not joint. It's essentially the mastermind is liable. Right, but if you go back to your- again, if we disregard the premise that we've been talking about, the VMC's line of authority, and go to a system more of joint liability, joint court visa liability, then in that regime, the patient would be not only suable, but would probably be a necessary party. Well, if we go all the way back to that, I suppose that's right. I think there's a nice intermediate step, which is to just have a broad conception of the direction or control test in a way that puts the doctor on the hook, but not the patient. Of course here, the party that we're attempting to put on the hook is neither the doctor or the patient, really. It's epic. And that gets to the second point, which is I guess this question of Apelli's And I really don't think that withstands a careful reading of Muni Auction, or VMC for that matter, because as Judge Newman indicated, there's a lot of confusion in the law about what you even mean by vicarious liability, indirect, direct, and I don't think that Muni Auction can be read to stand for the proposition that the only circumstances in which the direction or control test is satisfied is if there's a master-servant relationship that would make the master liable for the actions in the servant in those circumstances. And I think if you go all the way back to a district court case that BMC pointed to as being a correct statement of the law, or certainly didn't take issue with, which is the Shields against Halliburton case, it's 493 F SUP 1376. And it's a case that BMC cites favorably for the direction or control test. What's going on there is you have operations on an oil rig, and you have one company that's overseeing the operation and another company that's running the rig, and you have employees of the one company helping out in the process that jointly infringes the patent. Now in that situation, you wouldn't have, I mean I don't think, I mean I know this is probably being litigated in the BP oil spill, but I don't think that the drilling company is vicariously liable for the actions of the other company's employees. Certainly not in the normal use of that phrase, but it was fair to attribute the actions of those employees who were assisting in the infringement of the method. And in the same way, I think it's fair to attribute the actions of the patients here to the doctors in the overall scope of this patent. The last point that I'd like to make is just to respond to the point that Apelli makes near the end of his argument to the extent that, look, you got to write a patent correctly. And if you don't write the patent correctly, this court shouldn't intervene. But that assumes the premise. Why, what's wrong with this patent? Why is it wrong when you are making an innovation to make a better method for two parties to collaborate, why is it wrong to be honest and refer to the fact that there are two parties and the whole point of this is to allow them to collaborate? There's nothing, PTO doesn't tell you, you know, when you're writing your patent, please don't refer to two parties in a method claim. If they did, I mean, then maybe shame on us. But they don't. What they tell you to do is be clear. And it hardly serves that goal to tell somebody when they're trying to make an innovation about allowing two parties to collaborate better together that they should only refer to one of the two parties. Okay. With that, thank you, Your Honor. Thank you, Mr. Clement, and thank you, Mr. Moore. The case is taken under submission.